**Mona Mae CHANEY, Appellant,**

**Travelers Insurance Company (intervening plaintiff below),**

v.

**FALLING CREEK METAL PRODUCTS, INC., Appellee.**

No. 89–1425.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1990.

Decided July 5, 1990.

a claim against the manufacturer of the machine. The jury found in favor of the manufacturer. On appeal, Chaney argues that the jury instructions were so misleading that she is entitled to a new trial. We agree.

## BACKGROUND

Chaney is a 51–year–old woman, who worked at a Planters Peanuts plant in Fort Smith, Arkansas. Her job required her to clean machinery used in the processing of food products.

In 1979, Planters contracted with Falling Creek Metal Products for the design and manufacture of drum coating systems. Planters provided the preliminary "concept" drawings. Falling Creek provided the "detail" designs. The machines were then manufactured by Falling Creek and sold to Planters.

Planters installed one of the machines at its Fort Smith plant in June of 1983. On April 18, 1985, while attempting to clean the machine,[1] Chaney's hair net was caught by a protruding screw on the outside of the machine's rotating drum. The drum drew Chaney's hair net and hair into an unguarded rotating shaft. Her hair tangled around the shaft, pulling her skin and head into the shaft.

A co-worker on the sanitation crew attempted to cut Chaney loose from the rotating shaft with a plastic knife. She had little success. A mechanic then cut Chaney's hair loose with a carpenter's knife. According to the eyewitnesses, the machine tore her scalp from ear to ear at a point somewhere just above her hairline on her forehead. The front and top of her skull were visible. Her skin hung over the front of her face. After thirty minutes, the am-

Mark E. Ford, Fort Smith, Ark., for appellant.

Frank C. Elcan, II, Harrison, Ark., for appellee.

Before BOWMAN, Circuit Judge, and HEANEY, Senior Circuit Judge, and HUNTER,* District Judge.

HEANEY, Senior Circuit Judge.

Mona Mae Chaney, whose employment duties included cleaning a drum coating machine used in the processing of peanuts, was scalped by the machine. She brought

---

* The Honorable Elmo B. Hunter, District Judge for the Western District of Missouri, sitting by designation.

1. Chaney's duties included cleaning around and under the machine and the machine itself. To clean the machine, she would run clean water through the machine while it was operating. The evidence shows that the machine could not be cleaned unless it was operating. Because she was running water through the machine, Chaney, as did others on the sanitation crew, cover-

ed the conveyor that ran from the machine with plastic. Without this covering, the conveyor would have to be cleaned every time the machine was cleaned; otherwise, the conveyor was cleaned weekly.

In this instance, the plastic covering slipped. Chaney reached under the machine to readjust the covering. While backing out from underneath the machine, a protruding screw on a rotating drum caught her hair net.

bulance arrived and took her to the hospital. She has had prolonged facial deformities, headaches, and dizziness.

Chaney brought suit in strict liability, negligence, and breach of implied warranty of merchantability against Falling Creek. The case was tried before a jury. The interrogatories and the jury's responses are as follows:

(1) Do you find from a preponderance of the evidence that Mona Mae Chaney has sustained damages, that Falling Creek Products was engaged in the business of manufacturing or assembling the type of machine in question, that the machine in question was supplied by Falling Creek Metal Products in a defective condition that rendered it unreasonably dangerous, and that the defective condition was a proximate cause of Ms. Chaney's damages?

___ Yes

X No

(2) Do you find from a preponderance of the evidence that Mona Mae Chaney has sustained damages, that Falling Creek Metal Products was negligent, and that its negligence was a proximate cause of Ms. Chaney's damages?

___ Yes

X No

(3) Do you find from a preponderance of the evidence that Mona Mae Chaney has sustained damages, that Falling Creek Metal Products sold the machine in question and that it was unmerchantable, that this unmerchantable condition was a proximate cause of Ms. Chaney's damages, and that Ms. Chaney was a person whom Falling Creek Metal Prod-

ucts might reasonably expect to use or to be affected by the machine?

___ Yes

X No

(4)(a) Do you find from a preponderance of the evidence that following any act or omission on the part of Falling Creek Metal Products, an event intervened that in itself caused damage completely independent of the conduct of Falling Creek Metal Products?

X Yes

___ No

(4)(b) Do you find from a preponderance of the evidence that Mona Mae Chaney continued to use the machine in question with knowledge of the defect?

X Yes

___ No

(5) Using 100% to represent the total responsibility for the occurrence and any injuries or damages resulting from it, apportion the responsibility between the parties whom you have found to be responsible.

0% Falling Creek

100% Mona Mae Chaney

(must total 100%)

Accordingly, the jury returned a verdict in favor of Falling Creek. The district court denied Chaney's motions for JNOV or for a new trial.

## DISCUSSION

Chaney argues that the interrogatories and instructions, on the whole, misled the jury regarding the pivotal issue of intervening cause.[2] We agree. *See Circle J*

---

**2.** Chaney also raises several other issues on appeal. First, she argues that the district court erred in denying her motion in limine seeking to prevent the presentation of evidence that Planters was at fault for the injuries. We disagree. Arkansas courts have held that evidence of negligence on the part of an employer is admissible in a product liability case brought by an employee against a manufacturer. *See, e.g.,*

*W.M. Bashlin Co. v. Smith,* 277 Ark. 406, 643 S.W.2d 526, 531 (1982). Second, Chaney argues that the district court erred in not admitting evidence relating to Falling Creek's failure to comply with OSHA safety standards. By failing to proffer this evidence, Chaney failed to preserve this error on appeal. Third, she contends that the district court erred in submitting in-

*Dairy v. A.O. Smith Harvestore Products,* 790 F.2d 694, 698 (8th Cir.1986) (we reverse a jury verdict for faulty instructions only if a substantial right has been affected by the error); *Keltner v. Ford Motor Co.,* 748 F.2d 1265, 1267 (8th Cir.1984) (appellate review of jury instructions in diversity cases is limited to a determination of whether the jury understood the issues presented or whether the instructions, on the whole, contained an error that diverted or misled the jury from its proper task); *Wright v. Farmers Co–Op of Arkansas and Oklahoma,* 620 F.2d 694, 697 (8th Cir.1980) (we review jury instructions as a whole).

First, we note the verdict and responses to the interrogatories, because proximate cause is an element of each of the first three interrogatories, indicate that the jury found that Chaney's or Planters' conduct was an intervening cause. The jury may have also found all of the following to be present:

(1) That the drum coating machine was not defective or unreasonably dangerous;[3]

(2) that Falling Creek was not negligent in its manufacturing of the machine; *and*

(3) that the machine was not unmerchantable.[4]

The possible—if not probable—fact that the jury solely relied on its finding that Chaney's or Planters' conduct was an intervening cause turns this appeal in the favor of Chaney.[5] On the issue of her and Planters' conduct, Chaney asked the district court not to submit an intervening cause instruction, but if it did, to submit also a concurrent cause instruction. The district court submitted only the intervening cause instruction.

Chaney's theory on appeal is that before the issue of intervening cause can be submitted to the jury, evidence establishing both that the conduct of another person was the sole proximate cause of the injuries and that that cause was not foreseeable by Falling Creek must be presented. She argues that the manufacturer's duty to guard a machine is non-delegable, citing to Colorado and New Jersey law. As such, Planters could not be an intervening cause. She also argues that her own conduct could not be an intervening cause both because she was not negligent and because her conduct was foreseeable by Falling Creek.

Falling Creek argues that there exists more than substantial evidence from which the jury could properly conclude that the negligence of Planters was an intervening

struction number 8 to the jury. That instruction stated:

Falling Creek Metal Products contends that Mona Mae Chaney continued to use the machine in question with knowledge of the defect and was thus guilty of negligence that was a proximate cause of her own injury.

Falling Creek Metal Products has the burden of proving this contention.

As noted above, evidence of Chaney's negligence was presented to the jury, and therefore the district court did not err in submitting this instruction. Finally, we disagree with Chaney, and agree with the district court, that JNOV in favor of Chaney was not in order.

3. The issue of whether Falling Creek supplied the machine in a defective condition rendering it unreasonably dangerous was properly presented to the jury by the trial court. Evidence was presented that the machine was designed by Planters and built according to its specifications. If the jury had found that the machine was designed by Planters and Falling Creek just built it according to Planters' specifications, the jury would have been justified to answer interrogatory number 1 in the negative.

On the other hand, ample evidence exists indicating that all Planters did was supply a broad outline of the machine and that Falling Creek did the "detail" designs and built the machine. Furthermore, there was evidence in the record to support a finding that the machine was unreasonably dangerous. Therefore, it was possible for the jury to find that Falling Creek had supplied the machine in a defective condition rendering it unreasonably dangerous.

4. We assume that the jury did not find that Chaney did not sustain damages, that Falling Creek did not manufacture or assemble this machine, or that Falling Creek did not reasonably foresee Chaney's use of the drum coating machine.

5. While the jury may have found Falling Creek not responsible, we are not confident in coming to this conclusion from the interrogatories. Also, whether the jury found Planters' conduct to be an intervening cause, found Chaney's conduct was an intervening cause, or found both is impossible to determine from the interrogatories.

cause.[6] Furthermore, the non-delegable duty doctrine, cited by Chaney, has not been adopted by any Arkansas court. Finally, Falling Creek argues that the foreseeability of Chaney's conduct is irrelevant.

We need not reach the question whether, as a matter of law, Planters' conduct could not be an intervening cause because the jury's responses to the interrogatories are imbued with ambiguity. This ambiguity resulted from confusion created by the intervening cause instruction. That instruction stated:

> Falling Creek Metal Products contends and has the burden of proving that following any act or omission on its part, an event intervened that in itself caused damage completely independent of its conduct. If you so find, then its act or omission was not a proximate cause of any damage resulting from the intervening event.

Next, the district court stated that Chaney's conduct could be that intervening cause. The court did not, however, instruct the jury with regard to either the foreseeability of Chaney's conduct or the fact that Chaney's conduct may be merely a concurrent cause.

 Contrary to Falling Creek's view, it is settled law in Arkansas that where an intervening cause is foreseeable to the manufacturer, the conduct of the manufacturer, if giving rise to liability, is still considered the proximate cause of the injury, and the manufacturer remains liable. *See, e.g., Rhoads v. Service Machine Co.*, 329 F.Supp. 367, 374 (E.D.Ark.1971); *Hartsock v. Forsgren, Inc.*, 236 Ark. 167, 365 S.W.2d 117 (1963). It is also settled law that the negligence of another person is only a defense if it is the sole, proximate cause of the injuries. *See, e.g., Gatlin v. Cooper Tire & Rubber Co.*, 481 S.W.2d 338, 341 (Ark.1972).

▮ To us, the jury's response to interrogatory number 5 that Chaney was 100% responsible indicates that the jury believed that Chaney's conduct was an intervening cause. The record, however, is void of any evidence showing that Chaney's conduct was not foreseeable by Falling Creek.

Accordingly, Chaney's conduct, on the basis of this record, does not shield Falling Creek from liability. Thus, the jury's responses to the first three interrogatories, because of their alternative structure, are unreliable. On this basis, we remand for a new trial.[7]

---

**6.** Falling Creek points, for the most part, to the testimony of Larry Pray, a Planters' engineer, who stated that he was the "parent" of the three-drum coating system and he gave "design" drawings to James Smith, Falling Creek's president.

**7.** In addition, we believe that interrogatory number 5 should have included Planters as a phantom party. Accuracy would have been better served by this approach. Inclusion of Planters would have helped to clarify the legal effect of Planters' conduct. The district court noted the potential problems with the interrogatories given. It decided, however, not to add Planters as a phantom party.

> THE COURT: I've faced this before. It's never actually come down, as we say in south Arkansas, to the licklog, because it never actually got to the jury. But in previous cases I've considered this, and one consideration that weighs fairly heavily in my mind is that, as I recall, the Arkansas comparative fault statute allows you to compare the fault of parties.
>
> An employer is not and cannot be a party in this case. I think the counterargument to that is, well, they didn't really mean parties, they meant people that are somehow involved.
>
> But that's what it says. And in trying to work out a fairly large problem like this, it seems to me that almost any rational stopping place is to be taken advantage of. And I think that, for that reason, I'm not inclined to believe that the defendant is entitled to have the employer's negligence added to the interrogatory.

*Chaney v. Falling Creek Metal Products*, No. 88–2024, Transcript at 12–13 (W.D.Ark. May 19, 1989).

While the phantom party solution may cause some problems in determining the damages recoverable from a defendant-party by an employer under Ark.Stat.Ann. 11–9–410, a trial court can resolve those problems by making a second calculation of a defendant-party's percentage of

responsibility for damages purposes with only the plaintiff-party's percentage. Then, the trial court can apply Ark.Stat.Ann. 11–9–410. We are of the view that the benefits in accuracy of the phantom party approach outweigh the detriments.

Furthermore, the use of the phantom party does not contradict the legislative scheme of the Arkansas' workers' compensation statute because there is no evidence that the Arkansas legislature intended to confer immunity to employers from common law actions at the expense of nonemployers or at the expense of plaintiffs as against nonemployers.