Pauline ROGERS, as Administratrix of the Estate of Orka Rogers, Deceased, Thomas R. LeCroy, as Administrator of the Estate of Thomas A. LeCroy, Deceased, Plaintiffs,

v.

ARMSTRONG WORLD INDUSTRIES, INC., et al., Defendants.

Civ. No. LR–C–89–352.

United States District Court, E.D. Arkansas, W.D.

July 16, 1990.

---

Bobby Lee Odom, Odom & Elliott, Fayetteville, Ark., Ness Law Firm, Charleston, S.C., for plaintiffs.

Richard N. Watts, Laser Law Firm, Little Rock, Ark., Belinda Molander, Smith Law Firm, Dallas, Tex., Otis Turner, Arkadelphia, Ark., Tom F. Lovett, Lovett Law Firm, Stephen L. Curry, Ivester, Henry, Skinner & Camp, Little Rock, Ark., Floyd M. Thomas, Jr., Compton, Prewett, Thomas & Hickey, El Dorado, Ark., Thompson, Hine & Flory, Cleveland, Ohio, and Webster L. Hubbell, Little Rock, Ark., J. Dennis Chambers, Atchley Law Firm, Texarkana, Tex., Robert E. Kerrigan, Jr., A. Wendel Stout, III, Barbara L. Arras, Janet L. MacDonell, Jude D. Bourque, R.L. Courtade, Jr., Deutsch, Kerrigan & Stiles, New Orleans, La., Overton Anderson, Anderson & Kilpatrick, Little Rock, Ark., for defendants.

## MEMORANDUM AND ORDER

EISELE, Chief Judge.

Pending before the Court is the motion for summary judgment filed by separate defendant W.R. Grace & Co.—Conn seeking dismissal of the claims against this defendant filed by the administratrix of the estate of Orka Rogers. For the reasons set forth below, the motion will be granted in part and denied in part.

Between 1948 and 1973, Orka Rogers worked as a plumber and pipe-fitter at various locations throughout Arkansas, Texas, South Carolina and Illinois. During this time, he was allegedly exposed to asbestos-containing products manufactured or distributed by the sixteen defendants named in this lawsuit. It is also alleged that the decedent developed pulmonary injuries and ultimately died as a result of this exposure. The estate of Mr. Rogers seeks damages from the defendants on various theories of liability including negligence, strict products liability, breach of warranties and civil conspiracy.

W.R. Grace now moves for summary judgment contending that the Rogers estate lacks sufficient evidence that would enable a jury to conclude that exposure to W.R. Grace's product proximately caused the decedent's injuries. The defendant submitted to the plaintiff interrogatories that seek, *inter alia*, identification of all asbestos-containing products that the plaintiff claims the decedent was exposed to, as well as the approximate dates of and places of such exposure. In response, the plaintiff merely listed his employers and dates of employment. He did not identify any of W.R. Grace's products (or any other products for that matter) as being used at those job-sites. Nor did the decedent establish exposure to any product manufactured by this defendant when his deposition was taken on October 30, 1989.

W.R. Grace argues that it is entitled to judgment as a matter of law since Rule 56(c) of the Federal Rules of Civil Procedure mandates entry of summary judgment "against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In response, the plaintiff states that she will offer circumstantial evidence of the decedent's exposure to a W.R. Grace asbestos product through the testimony of Mr. Irving Ward. Mr. Ward worked as an in-

sulator and pipe-fitter at the Reynolds Aluminum Plant in Bauxite, Arkansas between 1956 and 1982. In his deposition, he stated that he worked in various buildings at the plant repairing large steel vats, referred to as vessels, and used a variety of asbestos-containing products including small amounts of an insulating cement called Zonolite, which is now owned by W.R. Grace.

In 1967, the decedent was employed by the Stewart Plumbing Company and worked at the Reynolds plant in Bauxite. However, the decedent also listed one other employer for 1967 and a second job-site, and it is unknown how long the plaintiff worked at the Reynolds plant. It is also unknown whether Zonolite was ever used by Mr. Ward, or any other worker in 1967, or if so whether this material was used in the areas where the decedent worked. Nonetheless, the plaintiff argues that this evidence creates a triable issue of fact in that it circumstantially establishes the decedent's exposure to W.R. Grace's Zonolite cement.

Relying on *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480 (11th Cir.1985), the defendant contends that the evidence is insufficient to defeat the present motion for summary judgment because it does not establish that Zonolite was ever used during the time the plaintiff worked at the Reynolds plant or that he worked in proximity to this product when it was being applied. In *Blackston*, as in the present case, the plaintiff lacked any direct evidence of exposure to the defendant's asbestos-containing product. However, the plaintiff sought to establish exposure by showing that the product was used by other workers during the construction of a paper mill at roughly the same time that the plaintiff worked there. *Id.*, at 1481. The district court granted summary judgment holding that while the plaintiff could establish that he worked at the paper mill when the defendant's product was being used, he failed to establish that he worked in the vicinity where the asbestos was being applied and therefore could not establish that he had been exposed to the defendant's product. *Id.*

In affirming the district court, the court of appeals held that under Georgia law the plaintiff's burden of establishing that exposure proximately caused his injuries required evidence that a particular defendant's asbestos product was used at the jobsite *and* that the plaintiff was in proximity to that product at the time it was used. *Id.*, at 1486. In so holding, the court refused to adopt a market-share basis for liability, and similarly rejected the plaintiff's argument that the mere presence of asbestos on the job-site created a rebuttable presumption of exposure to the defendant's products finding both would conflict with Georgia's causation requirements. *Blackston* at 1483.

The plaintiff in the present case argues that the standard of proof set forth in *Blackston* is not the law in the Eighth Circuit and should not be adopted by this Court. It appears that plaintiff believes *Blackston* stands for the proposition that exposure may not be shown circumstantially. Of course, the case does not so hold. *See Odum v. Celotex Corp.*, 764 F.2d 1486 (11th Cir.1985) (Applying *Blackston*, plaintiff produced sufficient circumstantial evidence through co-worker testimony to establish a genuine issue of fact concerning plaintiff's exposure to defendant's asbestos product).

Plaintiff also likens the facts of this case with *Roehling v. National Gypsum Company Gold Bond Building*, 786 F.2d 1225 (4th Cir.1986), where the court of appeals held that the plaintiff in an asbestos case had presented sufficient evidence of exposure to defeat the defendant's motion for summary judgment, and asks that this Court find likewise.

Plaintiff's argument misses the mark on several counts.. First, as a diversity case, this Court must construe and apply substantive Arkansas law to determine whether there is sufficient evidence of causation rather than federal common law. *See Jackson v. Johns–Manville Sales Corp.*, 750 F.2d 1314 (5th Cir.1985) (*en banc*). Even if federal law did control the issues in this case, the plaintiff offers no reasons

why the purported "rule" in one circuit should be adopted over another.

Fortunately, the Court need not make such a choice for the simple reason that the cases cited by the parties do not set out conflicting legal standards, only differing results in determining whether the evidence was sufficient to establish a genuine issue of fact. *See Roehling* at 1228 n. 6. In short, these cases serve not as competing standards of proof of causation but as examples of where courts have found evidence either sufficient or insufficient to show not just the conjectural possibility of exposure to a particular defendant's product but "the *probability* of exposure as a cause" of the plaintiff's injuries or death. *Blackston* at 1484 (emphasis in original).

In *Roehling,* as in *Blackston,* the court concluded that there was a triable issue of fact concerning plaintiff's exposure at two out of three job-sites because the plaintiff presented evidence that he "was *in the same vicinity* as witnesses who can identify the products causing the asbestos dust that all people in the area, not just the product handlers, inhaled." *Id.,* at 1228 (emphasis added). As for the third job-site, the *Roehling* court affirmed the district court's entry of summary judgment for those defendants. *Id.,* at 1226. The court found that the evidence created only a "possibility" of exposure at the third job-site because the plaintiff could not identify the products used there and none of the other witnesses worked at the site at the same time and place as the plaintiff. *Id.,* n. 3.

Other federal courts have similarly found that where the plaintiff will show exposure circumstantially he must offer evidence that places him in the vicinity of the defendant's product at the time it was being used. *See e.g., Menne v. Celotex Corp.,* 861 F.2d 1453, 1461–62 (10th Cir.1988) ("The fact that [plaintiff] merely worked at a job site where defendants' asbestos products were used was insufficient to establish actual exposure"); *Lohrmann v. Pitts-*

*burgh Corning Corp.,* 782 F.2d 1156, 1162 (4th Cir.1986) ("To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked"); *Gideon v. Johns–Manville Sales Corp.,* 761 F.2d 1129, 1144–45 (5th Cir.1985) (no evidence that asbestos fibers from Raymark products were a substantial causative factor under Nebraska law because plaintiff had only slight contact with Raymark products and offered no testimony that any dust was created when plaintiff handled the products).

█ The issue presented here is whether under Arkansas law, the plaintiff would similarly be required to show not only that W.R. Grace's Zonolite had been used at the Reynolds Aluminum plant in Bauxite, but that it had been used at the same time and in proximity to the plaintiff when he worked there, or whether proximate cause in Arkansas could be established through some lesser showing thereby leaving a genuine issue of fact for trial.

It should be noted that although the plaintiff relies on several theories of recovery, it is uncontroverted that under Arkansas law an essential element of each cause of action is that plaintiff's injuries were proximately caused by his exposure to the defendant's product. *See e.g.,* Ark.Code. Ann. §§ 4–86–102(a), 16–116–102(5) (strict products liability); *Ellsworth Brothers Truck Lines v. Canady,* 245 Ark. 1055, 1057, 437 S.W.2d 243 (1969) (negligence); *E.I. DuPont de Nemours & Co. v. Dillaha,* 280 Ark. 477, 479–80, 659 S.W.2d 756 (1983) (breach of warranties of fitness for a particular purpose and of merchantability).[1]

In Arkansas, proximate cause is defined as a "cause which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred." Ark.Model Jury Instr.Civil 3d Ed. 501. Although Arkansas law does not require proof of the precise damage caused

**1.** Plaintiff's civil conspiracy claim also requires proof that the defendant's conduct caused damages though not necessarily through exposure to

the defendant's products. See discussion *infra* at pp. 905–06.

by each of several alleged tortfeasors, it remains a requirement that the plaintiff show that tortious conduct was "a substantial factor in causing the harm. ..." *Id.,* at 799, *quoting,* Restatement of Torts, § 879. *C.f. Lohrmann v. Pittsburgh Corning Corp., supra,* 782 F.2d at 1162 (In Maryland, plaintiff must introduce evidence that "the conduct of the defendant was a substantial factor in bringing about the result").

As in *Blackston,* alternative theories of liability that minimize or eliminate the need to prove causation such as market share liability have not found their way into Arkansas jurisprudence. *Woodward v. Blythe,* 249 Ark. 793, 800–01, 462 S.W.2d 205 (1971). Nor has the Court found any Arkansas case that would support the conclusion that the presence of a toxic substance at a plaintiff's workplace creates a rebuttable presumption of exposure.[2] Therefore, there is no basis to conclude that under Arkansas law a plaintiff could prove causation in the absence of some evidence that would place him in the vicinity of the defendant's product at the time it was being used.

In *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) the Supreme Court stated:

> There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

The evidence that the plaintiff will offer in this case will establish only that W.R. Grace's Zonolite was used from time to time at the Reynolds Aluminum plant between 1956 and 1982. As stated earlier, Mr. Ward, the only individual who can testify to Zonolite's use, did not offer precise times or even years in which the product was used. Assuming it had been used in 1967, when the decedent worked at the plant, there remains no evidence that would show that the product was used in the same buildings or in proximity to the decedent. The evidence allows no more than speculation that the decedent was exposed to Zonolite. It does not establish a genuine issue for trial.

█ However, the plaintiff also alleges a civil conspiracy in which W.R. Grace was a participant along with the other defendants. Specifically, the complaint alleges that the defendants conspired to withhold from the public evidence from scientific research conducted as early as the 1920's that asbestos-containing products could have deleterious effects on the respiratory system of humans.

In Arkansas, a civil conspiracy is defined as:

> a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive, or immoral, by unlawful, oppressive or immoral means, to the injury of another. Such a conspiracy is not actionable in and of itself, but recovery may be had for damages caused by acts committed pursuant to the conspiracy.

*Mason v. Funderburk,* 247 Ark. 521, 529, 446 S.W.2d 543 (1969).

The present motion by W.R. Grace does not isolate the elements of this cause of action, or whether plaintiff's evidence concerning this claim creates a triable issue of fact. Instead, the defendant merely alleges that under "any" of the plaintiffs' claims causation is an element.

It is but not in the same manner as plaintiffs' claims sounding in negligence, products liability or breach of warranties. Unlike the causation element in those claims, which require a showing of exposure to defendant's actual product, it is conceivable that the conduct of a civil con-

---

**2.** Although tangential to the present case, it is instructive to note that Arkansas' Workers' Compensation Act provides that in the absence of conclusive evidence in favor of a claim, the disease asbestosis cannot be presumed to have caused a claimant's disability or death unless during the ten years immediately preceding the disability, the claimant had been exposed to asbestos dust over a period of not less than five years. Ark.Code Ann. § 11–9–602(b).

spirator could cause damages to a person even where that person was not directly exposed to the conspirator's product. The defendant could have separately discussed in its motion whether any evidence exists in this case that would support such a theory of recovery. Having failed to meet its burden under *Celotex*, however, summary judgment is not available to W.R. Grace with respect to plaintiff's civil conspiracy claims. Whether there is evidence from which a fact finder could conclude that such a conspiracy existed, that W.R. Grace was a participant, and that these acts committed pursuant to the conspiracy harmed plaintiff must await later resolution.

IT IS, THEREFORE, ORDERED that the motion for summary judgment filed by W.R. Grace be, and it is hereby, granted in part and denied in part. The motion is denied as to the claim of civil conspiracy. All other claims alleged in the complaint of the estate of Orka Rogers against this defendant are hereby dismissed.