Bettye FIELDS, Plaintiff

v.

WYETH, INC. d/b/a Wyeth; Schwarz Pharma, Inc.; and Teva Pharmaceutical, Inc., Defendants.

Case No. 08–2079.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

May 11, 2009.

Daniel J. McGlynn, McGlynn & Glisson APLC, Baton Rouge, LA, George R. Wise, Jr., The Brad Hendricks Law Firm, A Professional Association, Little Rock, AR,

William Burton Curtis, Miller, Curtis & Weisbrod, Dallas, TX, for Plaintiff.

Lyn Peeples Pruitt, Mitchell, Williams, Selig, Gates & Woodyard, Beverly A. Rowlett, Huckabay, Munson, Rowlett & Moore, Little Rock, AR, Geoffrey Charles Klingsporn, Jeffrey Ralph Pilkington, Davis, Graham & Stubbs, LLP, Denver, CO, Henninger Bullock, Andrew J. Calica, Mayer Brown LLP, New York, NY, for Defendants.

### Memorandum Opinion & Order

ROBERT T. DAWSON, District Judge.

Plaintiff Bettye Fields brings this action against Defendants Wyeth, Inc. d/b/a Wyeth ("Wyeth"); Schwarz Pharma, Inc. ("Schwarz"); and Teva Pharmaceutical, Inc. ("Teva") claiming that she was injured by consuming the prescription drug metoclopramide, which is manufactured and sold by Defendants. Plaintiff asserts causes of action under Arkansas state law for strict products liability, negligence, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, and breach of implied warranty. (Doc. 1). Currently before the Court is the motion for summary judgment filed by Wyeth and Schwarz. These Defendants contend that because it is undisputed that Plaintiff did not consume any metoclopramide produced or distributed by them, they are entitled to judgment as a matter of law. (Doc. 36). This Court holds that as a matter of Arkansas law, a plaintiff cannot maintain a products-liability action against the name-brand manufacturer of a prescription drug when the plaintiff consumed only the generic equivalent. Accordingly, the summary judgment motion of Wyeth and Schwarz is **GRANTED.**

### I. Background

In determining whether summary judgment is appropriate, a court must view the facts and inferences from those facts in the light most favorable to the nonmoving party. *Rabushka v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997). The facts in the present case are not disputed, and they are as follows:

Metoclopramide is a prescription drug approved by the FDA to treat gastroesophageal reflux disease. At various times, the drug has been produced by both Wyeth and Schwarz under the name brand Reglan®. Since the 1980s, metoclopramide has also been produced as a generic drug by a number of companies, including Teva.

Plaintiff ingested metoclopramide from approximately August 2002 through July 2005. She claims that the drug caused her to develop the neurological condition known as tardive dyskinesia. In connection with her use of metoclopramide, Plaintiff has stipulated that she ingested only generic metoclopramide and never ingested metoclopramide, whether generic or name brand, that was manufactured or distributed by either Wyeth or Schwarz.

### II. Standard

The party moving for summary judgment bears the burden of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party shows that there are no material issues of fact in dispute, the burden shifts to the nonmoving party to set forth facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Uhl v. Swanstrom,* 79 F.3d 751, 754 (8th Cir.1996). Accordingly, because there

are no issues of material fact in dispute, disposition by summary judgment is appropriate in this case.

### III. Analysis

 The threshold issue in this case, based on analysis of Plaintiff's complaint and as raised in the summary judgment motion of Wyeth and Schwarz, is whether Plaintiff's claims, despite her theories of relief, are properly analyzed as those for products liability under Arkansas law. As a federal court sitting in diversity, "the Court's task is to predict how the Arkansas Supreme Court would resolve the issue if confronted with it." *Crussell v. Electrolux Home Products, Inc.*, 499 F.Supp.2d 1137, 1138 (W.D.Ark.2007). In so doing, the Court can consider "related state court precedents, analogous decisions, considered dicta, and other reliable sources in an effort to determine what the Supreme Court's decision would be." *Id.* at 1138–39 (quoting *Kennedy Building Associates v. Viacom, Inc.*, 375 F.3d 731, 738 (8th Cir. 2004)). This Court holds that strict products liability, negligence, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, and breach of implied warranties, as pleaded by Plaintiff in this case, are products-liability actions and that Plaintiff cannot meet her burden of product identification.

 The term "product liability action" is defined by statute in Arkansas. It "includes all actions brought for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging, or labeling of any product." Ark.Code Ann. § 16–116–102(5). When considering the meaning and effect of statutory language, a court must construe it just as it reads, giving the words their plain and usually accepted meaning. *Mis-*

*sissippi River Transmission Corp. v. Weiss*, 347 Ark. 543, 550, 65 S.W.3d 867, 872–73 (2002). Under the plain language of this statute, a "product liability action" is defined not by the substantive legal theory under which the plaintiff proceeds, but rather by the factual scenario that gives rise to the plaintiff's claim and injury that results from the conduct of the defendant. The term encompasses "all" actions that otherwise meet the strictures of its definition. *Ruminer v. General Motors Corp.*, 483 F.3d 561, 563 (8th Cir.2007) (analyzing suit for negligence, strict liability, and breach of warranty as products liability); *Follette v. Wal–Mart Stores, Inc.*, 41 F.3d 1234, 1236 (8th Cir.1994) (suit for personal injury damages based on breach of warranty theory was a products-liability action); *Nationwide Rentals Co., Inc. v. Carter*, 298 Ark. 97, 101, 765 S.W.2d 931, 933 (1989) ("More than one theory of liability is permissible in a products liability claim."); AMI Civil 2008, Introduction to Chapter 10. Thus, a "product liability action" is broadly defined under Arkansas law.

Plaintiff claims entitlement to relief for personal injury based on theories of strict products liability, negligence, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, and breach of implied warranty. It is undisputed that the core of Plaintiff's complaint is the contention that the tortious conduct of Wyeth and Schwarz caused her to develop the neurological condition known as tardive dyskinesia. Indeed, "Plaintiff's Statement of Undisputed Facts" sets out what is alleged to be the uncontroverted factual knowledge of Wyeth and Schwarz relating to the potential of metoclopramide to cause tardive dyskinesia if consumed for a lengthy period of time and the companies' failure to provide adequate warnings and labeling relating to this risk. Thus, from a factual perspective, Plaintiff's claims arise

from "personal injury ... caused by or resulting from the manufacture ... formula, ... testing ... warning, instruction, ... or labeling" of metoclopramide. Ark. Code Ann. § 16–116–102(5). Accordingly, irrespective of the theory of liability, this can only be termed a "product liability action."

█ A basic requirement of products-liability actions under Arkansas law is product identification, i.e. that the actual product manufactured or distributed by the defendant caused injury to the plaintiff. *See Chavers v. General Motors Corp.*, 349 Ark. 550, 563, 79 S.W.3d 361, 370 (2002) (holding plaintiff could not prevail on products-liability action where there was no proof he used defendant's product). Based on the broad definition of a "product liability action," artful pleading simply cannot be used to circumvent this requirement. Thus, in order to prevail on her products-liability claims, Plaintiff must meet her product identification burden. *Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1303 (8th Cir.1993) ("plaintiffs in Arkansas must introduce sufficient evidence to allow a jury to find that more likely than not their exposure to a particular defendant's product was a substantial factor in producing their injuries"); *Lakeview Country Club, Inc. v. Superior Products*, 325 Ark. 218, 226, 926 S.W.2d 428, 432 (1996) (upholding directed verdict on claims for strict liability, breach of warranty of merchantability, and breach of warranty of fitness for a particular purpose where no connection shown between defendant and product supplier).

█ The undisputed facts of this case demonstrate that Plaintiff did not ingest any metoclopramide, whether generic or name brand, that was either produced or distributed by Wyeth or Schwarz. Accordingly, Plaintiff has stipulated that exposure to the products of Wyeth and Schwarz did not cause her injury, and her "product liability action" must therefore fail. *See National Bank of Commerce of El Dorado, Ark. v. Dow Chemical Co.*, 165 F.3d 602, 606–07 (8th Cir.1999) (holding summary judgment appropriate where plaintiff failed to establish product identification).

█ Plaintiff contends that Wyeth and Schwarz should be held liable for her injury because it was foreseeable that physicians prescribing generic metoclopramide would rely on information provided by name-brand manufacturers. Plaintiff's argument attempts to create a duty on the parts of Wyeth and Schwarz to all individuals who have or will consume metoclopramide, irrespective of the company that produced it. However, even assuming that it was foreseeable to Wyeth and Schwarz that the information provided by them would be used in order to prescribe the drugs of their generic competitors,[1] the fact that their products were never consumed is unchanged.

█ As the definition of a "product liability action" makes clear, a plaintiff must demonstrate causation. Ark.Code Ann. § 16–116–102(5). "Arkansas has not adopted alternative or market share liability, but has retained the traditional require-

---

**1.** It is doubtful that any duty exists under the present facts and as a matter of Arkansas law. "Duty is a concept that arises out of the recognition that relations between individuals may impose upon one a legal obligation for the other." *Marlar v. Daniel*, 368 Ark. 505, 509, 247 S.W.3d 473, 476 (2007). Under Arkansas law, there is no generalized action in tort absent such a duty. *Leach v. Mountain Lake*, 120 F.3d 871, 873 (8th Cir.1997). However, following the lead of the Eighth Circuit Court of Appeals, this Court will rely on proximate cause as a matter of prudence in order to limit liability under Arkansas law. *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 671 (8th Cir.2009).

ment of proximate cause in all tort cases." *Jackson*, 994 F.2d at 1303; *see also Rogers v. Armstrong World Industries, Inc.*, 744 F.Supp. 901, 904 (E.D.Ark.1990)(stating that "under Arkansas law an essential element of each cause of action is that plaintiff's injuries were proximately caused by his exposure to the defendant's product."); AMI Civil 2008, 1013. Thus, "[b]efore [a defendant] can be held liable for causing an injury, the [plaintiff] must establish that the [defendant's] product was actually used." *National Bank of Commerce of El Dorado*, 165 F.3d at 606–07.

 Proximate cause is "a cause which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred." AMI Civil 2008, 501. In the present case, there can be no contention that exposure to the products of either Wyeth or Schwarz proximately caused Plaintiff's injury when it is stipulated that she never ingested metoclopramide produced by them. As a result, the actions or inactions of Wyeth and Schwarz clearly cannot form a part of the natural and continuous sequence that gave rise to Plaintiff's injury. Because reasonable minds cannot differ, proximate cause is a matter of law for the Court, *Wilson v. Evans*, 284 Ark. 101, 102, 679 S.W.2d 205, 206–07 (1984), and Wyeth and Schwarz are entitled to summary judgment.

 This Court's decision rests on public policy grounds.

Name brand manufacturers undertake the expense of developing pioneer drugs, performing the studies necessary to obtain premarketing approval, and formulating labeling information. Generic manufacturers avoid these expenses by duplicating successful pioneer drugs and their labels. Name brand advertising benefits generic competitors because generics are generally sold as substitutes for name brand drugs, so the more a name brand drug is prescribed, the more potential sales exist for its generic equivalents. [Holding a name brand manufacturer responsible for] injuries caused by other manufacturers' products, over whose production the name brand manufacturer had no control … would be especially unfair when, as here, the generic manufacturer reaps the benefits of the name brand manufacturer's statements by copying its labels and riding on the coattails of its advertising. The premarketing approval scheme Congress established for generic equivalents of previously approved drugs cannot be construed to create liability of a name brand manufacturer when another manufacturer's drug has been consumed.

*Foster v. American Home Products Corp.*, 29 F.3d 165, 170 (4th Cir.1994). Thus, the party that actually controls the manufacturing and labeling of the product in question, and enjoys the profit of its sale, should bear legal liability for any resulting injury. *Moretti v. Wyeth, Inc.*, 2009 WL 749532, 4 (D.Nev. March 20, 2009). Accordingly, this Court holds that Plaintiff's causes of action for strict products liability, negligence, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, and breach of implied warranties are products-liability actions that cannot succeed as a matter of Arkansas law.[2]

## IV. Conclusion

For the foregoing reasons, the summary judgement motion of Wyeth and Schwarz

---

**2.** The Court's conclusion is in line with the overwhelming majority of courts across the nation that have considered this issue. *See, e.g., Swicegood v. Pliva, Inc.*, 543 F.Supp.2d 1351, 1358–59 (N.D.Ga.2008); *Colacicco v. Apotex, Inc.*, 432 F.Supp.2d 514, 540–41 (E.D.Pa.2006), aff'd, 521 F.3d 253 (3d Cir. 2008); *Flynn v. American Home Prods. Corp.*, 627 N.W.2d 342, 350 (Minn.Ct.App.2001).

(doc. 36) is **GRANTED.** Plaintiff's causes of action against Teva remain, and this case is set for trial on December 14, 2009.